UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

———————————————————————————

IRA C. HOKE,

                    Petitioner,                                          **REPORT AND**
                                                                         **RECOMMENDATION**

          V.                                                             02-CV-516

DAVID L. MILLER, Superintendent,
Eastern Correctional Facility,

                    Respondent.

———————————————————————————

## I. INTRODUCTION

Petitioner Ira Hoke, by and through his attorney of record, Michael J. Hutter, Jr., Esq.,

commenced this action seeking habeas corpus relief under 28 U.S.C. § 2254.  Petitioner is

an inmate at the Eastern Correctional Facility.  In 1997, he was convicted in a New York

State court of Second Degree Murder and was sentenced to a term of imprisonment.

Petitioner contends that his conviction was imposed in violation of his constitutional rights

and should be vacated.

This matter was referred to the undersigned by the Honorable Norman A. Mordue,

Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is

presently before this Court for a report and recommendation. (Docket No. 11).

## II. BACKGROUND

**A.      Facts**

The following factual summary is derived from the state court records provided in

this case.  There is no dispute that on April 28, 1996, Petitioner shot and killed Samuel Sutton ("Sutton").  The victim was a former roommate of one of Petitioner's sons.  (T at 339).[1]  One year earlier, Sutton had been charged with assault after hitting Petitioner's son with a baseball bat and breaking his jaw.  (T at 337).  Sutton's sentence for that assault was sixty days in jail and three years probation.  In addition, Sutton was ordered to make restitution for certain medical expenses.  (T at 343).

On April 28, 1996, Petitioner saw Sutton on Central Avenue in the City of Albany, New York just after noon time.  Petitioner allegedly wanted to discuss the matter of restitution with Sutton.  Testimony at trial revealed that after initially driving away, Petitioner returned to the area, approached Sutton, grabbed him by the shirt, and punched him several times.  Sutton fell to the ground.  (T at 178-180).  Petitioner then shot him nine times, eight times in the back. (T at 180).  Witnesses testified that Petitioner returned to his vehicle after the shooting, dialed 911, and calmly awaited the arrival of the police.  (T at 144-145).

On May 3, 1996, a Albany County Grand Jury returned Indictment Number 11-4885, which charged Petitioner with two counts of Murder in the Second Degree, in violation of New York Penal Law ("N.Y.P.L.") §125.25(1) and §125.25(2).[2]

## B.    State Trial Court Proceedings

The Honorable Thomas A. Breslin, Albany County Court Judge, presided over

---

[1]References preceded by "T" are to the transcript pages of Petitioner's trial.

[2]Unless otherwise indicated, all references to the N.Y.P.L. are to McKinney 1998.

Petitioner's trial proceedings.   The trial began on April 29, 1997.   Petitioner was represented at trial by E. Stewart Jones, Jr., Esq. Petitioner conceded that he was the person who shot Sutton.   However, he interposed the affirmative defense of extreme emotional disturbance.  (T at 459-60, 370-384, 516-532). On May 5, 1997, the jury found Petitioner guilty of one count of Murder in the Second Degree.[3] (T at 799).   Additionally, the jury found that Petitioner failed to sustain his burden of proof with respect to the affirmative defense of extreme emotional disturbance.  (Id.).

On June 18, 1997, Petitioner was sentenced to an indeterminate term of twenty-five years to life imprisonment for his conviction of Murder in the Second Degree.  (S at 8).[4]

## C.      State Appellate Proceedings

Petitioner, acting *pro se*, made a motion pursuant to New York Criminal Procedure Law ("CPL") §440 to vacate his judgment of conviction.  In his CPL §440 motion, Petitioner asserted two arguments: (1) that the trial court failed to properly address and/or accomodate Petitioner's hearing impairment; and (2) that he received ineffective assistance of trial counsel.

On October 26, 1999, Judge Breslin denied Petitioner's motion to vacate without a hearing.  Judge Breslin found that Petitioner's auditory deficiencies did not impair him from participating in his defense.  Judge Breslin cited Petitioner's trial testimony, which reflected

_____

[3]The second count of the indictment for Murder in the Second Degree pursuant to N.Y.P.L. §125.25(2) was not presented to the jury for consideration.

[4]References preceded by "S" refer to the transcript pages of Petitioner's sentencing proceedings held before Albany County Court Judge Breslin.

an understanding of the questions asked of him.   Judge Breslin also noted that after Petitioner complained during the trial of not being able to hear very well, the attorneys and witnesses attempted to raise their voices.  Following this accommodation, Petitioner made no further requests or complaints regarding his ability to hear the trial proceedings. Additionally, Judge Breslin found that Petitioner's trial counsel was a very experienced advocate and that Petitioner received effective representation.  (S.R.[5] at 965-967).

Thereafter, Petitioner appealed his conviction and the denial of his CPL §440 motion to the Appellate Division, Third Department of the New York State Supreme Court. Petitioner raised three (3) arguments on appeal: (1) that the verdict was against the weight of the evidence since he established the affirmative defense of extreme emotional disturbance; (2) that the prosecutor's closing argument was prejudicial and inflammatory; and (3) that his CPL §440 motion should not have been denied without a hearing.

In a decision issued on October 26, 2000, the Appellate Division affirmed Petitioner's conviction.   People v. Hoke, 714 N.Y.S.2d 602 (3rd Dept 2000).   With respect to Petitioner's claim that he established an affirmative defense of extreme emotional disturbance, the appeals court found that "weighing the relative probative force of conflicting testimony and the relative strength of conflicting inferences which may be drawn from the testimony, it cannot be concluded that the jury's verdict rejecting defendant's affirmative defense is against the weight of the evidence."  Id. at 604.

Additionally, the Appellate Division found that the prosecutor's remarks that Petitioner contends were improper did not prejudice the jury and did not warrant a new trial.

---

[5]References preceded by "S.R." are to the pages of the state court records provided in this case.

4

Id.  However, the Appellate Division found that one unspecified, possibly objectionable comment by the prosecutor was not objected to at trial, and as such, was not preserved for their review.  Id.

Lastly, the Appellate Division found that Petitioner's CPL §440 motion was properly denied and that no hearing was warranted.  Specifically, the appeals court found that

> It is well settled that a hearing is not required pursuant to CPL 440.10, unless the defendant establishes nonrecord material facts which create an issue as to the validity of the judgment (see, People v Swackhammer, 260 AD2d 939, 941, lv denied 93 NY2d 1028; People v English, 246 AD2d 925, lv denied 91 NY2d 972; People v McGourty, 188 AD2d 679, 681, lv denied 81 NY2d 843). Here, defendant's sole contention is that as a result of his impaired hearing, he was unable to fully participate in his defense since he did not hear much of what transpired during the trial. We note that at the outset of the trial, the court was made aware of defendant's hearing deficiencies. Thus, defendant's hearing deficiencies are not a nonrecord material fact which would require an evidentiary hearing before resolution of the motion.

Id.  The appeals court further noted that the record did not support Petitioner's claim that he was unable to fully participate in his defense.  Id.

Thereafter, Petitioner made application for leave to appeal to the Court of Appeals, which was denied on April 16, 2001.  People v. Hoke, 96 N.Y.2d 801 (2001).


**D.  Federal Habeas Corpus Proceedings**

Petitioner, represented by counsel, commenced this action on April 12, 2002, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Docket No. 1). Petitioner asserts three grounds for habeas relief: (1) that the trial court failed to fully assure Petitioner's ability to participate in his own defense despite the trial court's knowledge of his impaired hearing; (2) that his CPL §440 motion should not have been

denied without a hearing; and (3) that the prosecutor's remarks during closing argument resulted in the deprivation of Petitioner's constitutional right to a fair trial.  See (Docket No. 1).  Respondent filed submissions in opposition.  (Docket No. 5 & 6).  Petitioner filed a Traverse in further support of the Petition.  (Docket No. 9).

For the reasons that follow, the Court recommends that the Petition be DENIED.

### III. DISCUSSION

**A.      Federal Habeas Corpus Standard**

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits."  28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001).  The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan, 261 F.3d at 313 (quotation omitted).  The Second Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA.  Id. at 312-313.

Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

While both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714, 715 n. 1 (2d Cir. 1997), AEDPA also requires a Petitioner to rebut that presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002).  A presumption of correctness applies to findings by both state trial and appellate courts.  Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law.  A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts."  Id.

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case."  Id.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application

7

must also be unreasonable." Id. at 411.  In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

**B.    Petitioner's Claims**

As set forth above, Petitioner asserts three grounds for habeas relief: (1) that the trial court failed to fully assure Petitioner's ability to participate in his own defense despite the  trial court's knowledge of his impaired hearing; (2) that his CPL §440 motion should not have been denied without a hearing; and (3) that the prosecutor's remarks during closing argument resulted in the deprivation of Petitioner's constitutional right to a fair trial. See (Docket No. 1).

**1.    Hearing Impairment**

Petitioner's first claim for habeas relief is that he was unable to fully participate in his defense due to the trial court's failure to adequately address or accommodate his hearing impairment.   As to this issue, the Appellate Division concluded "the record fail[ed] to substantiate defendant's claim that he was unable to fully participate in his defense." Hoke, 714 N.Y.S.2d at 605.  Specifically, the appeals court explained:

> Defendant made no special requests of the court at any time during the trial as a result of his inability to hear and understand the testimony. At no time during the trial did the defendant indicate to the court that as a result of hearing deficiencies, he was unable to participate. Indeed, our examination of defendant's testimony at trial

suggests that defendant did, in fact, fully participate in the defense and was generally capable of hearing all of the testimony presented.

Id.

There is no dispute that Petitioner suffers from a hearing impairment and that the trial court was aware of the impairment.  Evidently, Petitioner's hearing difficulties were exacerbated when one of his hearing aides broke shortly after the trial began.

It also appears to be undisputed that the trial court made efforts to address Petitioner's hearing problems by asking witnesses and attorneys to raise their voices.  In addition, Petitioner's trial counsel and the prosecutor made an effort to position themselves in the courtroom so that Petitioner could hear them.

Petitioner argues that the foregoing measures were inadequate and contends that he was entitled to have his hearing aid repaired.  In the alternative, Petitioner claims that the trial court should have provided him with a functional hearing device.  Petitioner contends that his hearing difficulties prevented him from fully participating and assisting in his defense.

In Chambers v. Mississippi, 410 U.S. 284, 294 (1973), the Supreme Court held that constitutional due process provides "in essence, the right to a fair opportunity to defend against the State's accusation."  It has been recognized that "this guarantee encompasses both the right of a defendant to confront witnesses against him and his right to assist in his own defense." Phillips v. Miller, No. 01-Civ-1175, 2000 WL 33650803, at *9 (S.D.N.Y. Dec. 3, 2000).

However, Petitioner failed to cite and this Court could not locate any established Supreme Court precedent indicating that due process demands that specific

9

accommodations be made to address a defendant's hearing difficulties.   Although the Second Circuit has held that a non-English speaking defendant has a constitutional right to be provided with the services of an interpreter, Abdullah v. I.N.S., 184 F.3d 158, 164 (2d Cir. 1999), no such determination has been made in regards to the rights of a hearing impaired defendant.

The district court in Phillips v. Miller, at *10,  was presented with a claim similar to the claim raised by Petitioner in this case.   In Phillips, the hearing impaired petitioner claimed that the trial court should have provided him with an interpreter.   Noting the absence of controlling case law on this question, the Phillips court indicated that a hearing impaired defendant might be entitled to assistance under some circumstances.   The court's decision in this regard was based upon Meaders v. Carroll, 8 F.3d 28 (Table), No. 92-15048, 1993 WL 385441, at *1 (9th Cir. Sep't 1993); Ferrell v. Estelle, 568 F.2d 1128 (5th Cir. 1978), withdrawn on other grounds, 573 F.2d 867 (5th Cir. 1978); and several New York state court decisions recognizing that hearing-impaired defendants have a right to interpretive assistance in certain circumstances. See, e.g. People v. Rivera, 480 N.Y.S. 2d 426, 433 (N.Y. County 1984).

However, the Phillips court concluded that, at a minimum, the need for hearing assistance must either be raised by the defendant or be obvious to the trial court.  Phillips, 2000 WL 33650803, at *12.  In the present case, the trial court and prosecutor were made aware of Petitioner's hearing difficulties and made accommodations to address the issue. Petitioner never requested that additional accommodations be made or advised the trial court that he was unable to participate meaningfully in his defense.   There also does not appear to be any evidence that Petitioner's impairment was so obvious that the trial court

10

could reasonably have been expected, *sua sponte*, to take further measures.[6]  Indeed, Petitioner's trial testimony indicated that he was capable of hearing the testimony presented and participating in his defense.  Further, Petitioner failed to provide details concerning the specific prejudice that he allegedly suffered as a result of his apparent hearing difficulties.

      As noted above, the Appellate Division concluded that "the record fails to substantiate [Petitioner's] claim that he was unable to fully participate in his defense." Hoke, 714 N.Y.S.2d at 605.  In light of the foregoing facts and, particularly, due to Petitioner's failure to request that the trial court provide additional auditory accommodations, this Court finds that the Appellate Division's decision in this regard was not based upon unreasonable determination of the facts in light of the evidence presented.

See Phillips, 2000 WL 33650803, at *13 (denying habeas relief due to Petitioner's failure to request "interpretive assistance" to address alleged hearing difficulties); Meaders, 8 F.3d 28, 1993 WL 385441, at *1 (denying claim for habeas relief where trial transcript showed that petitioner or his trial counsel "complained of [petitioner]'s inability to hear on only two occassions; [and] both times the court acted to ensure that the witnesses comply with the requests to speak directly into the microphone").

      In addition, due to the lack of Supreme Court precedent concerning the due process rights of hearing impaired defendants, this Court cannot find that the Appellate Division's ruling as to this issue violated clearly established Federal law, as determined by the

---

[6]Petitioner's argument that the trial court should have conducted a hearing to determine whether Petitioner was able to hear the trial testimony fails for the same reason.  To wit, no such hearing was requested at trial and there is no indication that the trial court should have been expected to grant such a hearing *sua sponte.*

Supreme Court of the United States.[7]  Accordingly, it is recommended that Petitioner's claim for habeas relief based upon the trial court's alleged failure to address Petitioner's hearing impairment be DENIED.

### 2.   CPL §440 Hearing

In his second claim for habeas relief, Petitioner argues that the trial court erred by denying his CPL § 440 motion without conducting a hearing.  Specifically, Petitioner alleges that the trial court improperly denied the 440 motion without holding a hearing to determine whether Petitioner's auditory problems prevented him from fully participating in his trial.

Courts in the Second Circuit, have consistently held that "the failure of a state court to hold a hearing is not, in and of itself, an independent ground for habeas relief." Welch v. Artus, 04-CV-205, 2007 WL 949652, at *55 (W.D.N.Y. Mar. 29, 2007); see also Dexter v. Artus, 01-CV-237, 2007 WL 963204, at *9 (N.D.N.Y. Mar. 27, 2007); Jones v. Duncan, 162 F. Supp.2d 204, 217 (S.D.N.Y. 2001).  Accordingly, Petitioner's claim that the trial court improperly failed to conduct a hearing with respect to the CPL § 440 motion is not cognizable on federal habeas review.

Moreover, the Appellate Division concluded that the trial court did not err by denying the § 440 motion without conducting a hearing.  Specifically, the appeals court found that a hearing was not required because Petitioner's auditory problems, which were addressed

---

[7]This Court notes that Petitioner, who is represented by counsel in this case, does *not* claim that his trial counsel was ineffective with respect to addressing Petitioner's hearing difficulties.  In addition, although the Petition makes reference to the Americans with Disabilities Act ("ADA"), it does not appear that such a claim is asserted in this action.  In any event, such a claim would not be cognizable in this case.  See Dyer v. Holt, No. 4:CV-04-2716, 2005 WL 1630822, at *3 (M.D. Pa. July 11, 2005) (finding that ADA claim "is not properly raised in a petition for writ of habeas corpus").

on the record during trial, did not constitute a "nonrecord material fact."  Hoke, 714
N.Y.S.2d at 605.  On the record presented, this Court cannot say that the Appellate
Division's decision in this regard was either contrary to clearly established Federal law or
based upon an unreasonable determination of the facts.

Accordingly, this Court recommends that Petitioner's claim for relief based upon the
trial court's refusal to conduct a CPL § 440 hearing be DENIED.


### 3.      Prosecutorial Misconduct

In his third and final claim for habeas relief, Petitioner argues that prosecutorial
misconduct deprived him of his constitutional right to a fair trial.  In particular, Petitioner
objects to specific comments made by the prosecutor during summation.

First, Petitioner contends that the prosecutor improperly stated that the testimony
of Petitioner's expert had been "bought and paid for" and that the expert was a "hired gun."
(T at 731-732).  Thereafter, the prosecutor stated that the prosecution witnesses were "not
on the payroll of the District Attorney's office."  (T at 741).

Second, Petitioner also objects to comments made by the prosecutor with respect
to Petitioner's history with guns.  The prosecutor noted that Petitioner owned three hundred
guns over the past thirty years.  The prosecutor further stated that  "you can't tell me that
at some point and at some level in his mind he always knew there was going to come a
point   . . . when this [gun] . . .was not going to be aimed at a paper target, but it was going
to be aimed at a human being."  (T at 737-738).

Thirdly, Petitioner objects to the prosecutor's statements during summation
regarding Petitioner's affirmative defense of extreme emotional disturbance.    The

prosecutor instructed the jury that the affirmative defense allowed them to assess whether Petitioner's response to the situation was a reasonable one, deserving of some leniency. (T at 744).  Then the prosecutor stated:

> [Y]ou think about it.  Someone gets into [a] fight with your 28-year-old son, a 28-year-old son who's basically been nothing but a problem for the past eight years, and that in the course of that fight your son loses and suffers a broken jaw.  Is the shooting in this case, nine bullets, eight in the back, a reasonable response?

(T at 745).

Petitioner argues that the foregoing represents an incorrect statement of the law with respect to the defense of extreme emotional disturbance.

The habeas court's scope of review as to claims of prosecutorial misconduct is quite limited.   In order to overturn a conviction, the Court must find that the prosecutor's comments constituted more than mere trial error and instead were so egregious as to violate the petitioner's due process rights. See Donnelly v. DeChristoforo, 416 U.S. 637, 647-48 (1974); Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir.1990) ("The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power.") (internal quotation marks and citations omitted); accord Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir.1998).

Thus, to be entitled to relief, Petitioner must show that he "'suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict.' " Tankleff, 135 F.3d at 252 (quoting Bentley v. Scully, 41 F.3d 818, 823 (2d Cir.1994) (internal quotation marks and citation

14

omitted in original)).

In determining whether a defendant has suffered actual prejudice as a result of the prosecutorial misconduct, the reviewing court considers three key factors: "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." Floyd, 907 F.2d at 355 (quoting United States v. Modica, 663 F.2d 1173, 1181 (2d Cir.1981) (per curiam)); accord, e.g., Germosen, 139 F.3d at 128; United States v. Miller, 116 F.3d 641, 683 (2d Cir.1997); United States v. Perez, 144 F.3d 204, 209 (2d Cir. 1998).

As the Second Circuit has noted, "[o]ften, the existence of substantial prejudice turns upon the strength of the government's case: if proof of guilt is strong, then the prejudicial effect of the comments tends to be deemed insubstantial; if proof of guilt is weak, then improper statements are more likely to result in reversal." Modica, 663 F.2d at 1181, see also, Bentley, 41 F.3d 818, 824 (2d Cir. 1994)(holding that review of a habeas corpus challenge based upon prosecutorial misconduct includes consideration of "whether the conviction was certain absent the prejudicial conduct.").

### a.    Prosecutor's Comments Regarding Expert and Gun History

With respect to the prosecutor's comments concerning Petitioner's expert witness and history with guns, the Appellate Division concluded that such comments "would have been better left unsaid;" however, Petitioner had not shown that the comments, viewed in the context of the entire summation, had "a decided tendency to prejudice the jury." Hoke, 714 N.Y.S.2d at 604.

After reviewing the transcript in its entirety, the Court agrees with the Appellate

Division that the prosecutor's remarks concerning Petitioner's ownership of three-hundred guns, and the reference to his character that he would eventually shoot someone because he owned guns, "would have been better left unsaid."  Indeed, the remarks were improper and ill-advised.  The issue, however, is whether the statements effectively denied Hoke his fundamental right to a fair trial.  Reviewing the challenged remarks under the three-part test set forth in <u>Modica</u>, 663 F.2d at 1181, the Court finds that the remarks were improper. Regrettably, the trial judge did not take the opportunity to employ any curative measures and instead implicitly condoned the prosecutor's impropriety by overruling defense counsel's objections and by failing to issue *sua sponte* curative instructions regarding the offensive comments.  However, the prosecutor's comments were confined to only these remarks during summation; with the exception of the comments in summation, the trial as a whole was essentially free from improper conduct by either counsel.  Also, the prosecutor, other than the objectionable remarks made in summation, "did not manipulate or misstate the evidence, nor did [he] implicate other specific rights of the accused such as the right to counsel or the right to remain silent." <u>Darden v. Wainwright</u>, 477 U.S. 168, 182, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).

Turning to the second <u>Modica</u> factor in its three-part test, the court issued no curative instructions, and while trial counsel properly objected to all of the statements, his objections were overruled and therefore he requested no curative instructions.

Turning to the third <u>Modica</u> factor, even assuming arguendo that the prosecutor's remarks and the failure of the trial court to intercede was improper, upon a review of the entire trial transcript, the Court is convinced of the certainty of Hoke's guilt.. Considering the strength of the prosecution's case against petitioner and the certainty of the jury returning

16

a guilty verdict, the Court is compelled to find that the improper comments did not so infect the trial with unfairness as to make the proceeding a denial of due process.  Indeed, the evidence against Hoke was overwhelming.  After shooting the victim, to which he conceded at time of trial, he waited for the police and surrendered to them.  His primary defense was that he suffered from "extreme emotional disturbance," a defense rejected by the jury. Therefore, habeas relief will not issue on this claim.

In conclusion, after careful review of the context of the entire summation, this Court finds that Petitioner has failed to demonstrate that the Appellate Division's decision as to the lack of prejudice was either contrary to clearly established Federal law or based upon an unreasonable determination of the facts. See Everett v. Fischer, 00-CV-6300, 2002 WL 1447487, at *3 (E.D.N.Y. July 3, 2002) (finding that prosecutor's statement that defense expert had been paid to testify "was a fair statement of the facts, a legitimate argument about evaluating the credibility of petitioner's expert, and an invited response to defense counsel's statement that petitioner's expert was more credible than the People's expert"); United States v. Germosen, 139 F.3d 120, 128 (2d Cir.1998) ("Rarely are comments in a prosecutor's summation 'so prejudicial that a new trial is required.'")(quoting United States v. Forlorma, 94 F.3d 91, 93 (2d Cir.1996) (quotations omitted).

### b.    Prosecutor's Comments Regarding Affirmative Defense

Petitioner also claims that the prosecutor engaged in unconstitutional misconduct by misstating New York law regarding the affirmative defense of extreme emotional disturbance.  Under applicable New York law, "extreme emotional disturbance is a partial affirmative defense to murder in the second degree." DeLuca v. Lord, 77 F.3d 578, 585 (2d

17

Cir. 1996)(citing N.Y.Penal Law § 125.25(1)(a)).  The defense is available where "[t]he defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse." Id. (citing People v. White, 581 N.Y.S.2d 651, 652 (1992); People v. Moye, 498 N.Y.S.2d 767, 769, (1985)).[8]

As noted above, the prosecutor's summation questioned Petitioner's extreme emotional disturbance defense by arguing that the victim's attack on Petitioner's adult son did not provide a reasonable explanation or excuse for the alleged extreme emotional disturbance.  The Appellate Division concluded that the prosecutor's comment was not a misstatement of New York law.  Hoke, 714 N.Y. 2d at 905.

The appeals court's finding in this regard is consistent with New York law. See, e.g., Peopler v. Ludwigsen, 552 N.Y.2d 450, 451 (2d Dep't 1990) (finding that jury "was entitled to conclude that the excuse offered for [defendant's] emotional state was so unreasonable under the circumstances that it did not warrant mitigation"); People v. Murden, 593 N.Y.S. 2d 837, 837 (2d Dep't 1993) (holding that "the claimed difficulties between the defendant and his girlfriend were not of such character as to constitute a reasonable excuse for the purported emotional disturbance").

Moreover, even if one were to conclude that the prosecutor misstated the law regarding the affirmative defense, the trial court instructed the jury as to the elements of the

---

[8]The New York Court of Appeals has held that the extreme emotional disturbance defense requires the defendant to produce "evidence that he or she suffered from a mental infirmity not rising to the level of insanity at the time of the homicide, typically manifested by a loss of self-control." People v. Smith, 776 N.Y.S.2d 198, 199 (2004). "The defense requires proof of a subjective element, that defendant acted under an extreme emotional disturbance, and an objective element, that there was a reasonable explanation or excuse for the emotional disturbance." Id.

defense (T at 777-81), thereby curing any arguable prejudice. See Zafiro v. United States, 506 U.S. 534, 540-41 (1993) (emphasizing that prejudice "can be cured with proper instructions and juries are presumed to follow their instructions") (internal quotation marks omitted)).

### c.   Lack of Actual Prejudice

Lastly, even assuming the prosecutor's comments were improper, Petitioner has failed to establish that he suffered actual prejudice as a result of those comments.  The evidence regarding Petitioner's conduct and demeanor before, during, and after the shooting, was fatal to his claim of extreme emotional disturbance.  In particular, the number of shots fired by Petitioner (nine) and his calm and collected conduct immediately following the shooting were quite inconsistent with the "loss of control" associated with an extreme emotional disturbance.  See Zamora v. Phillips, No. 04-CV-4093, 2006 WL 2265079, at *6-*7 (E.D.N.Y. Aug. 8, 2006) ("In determining whether a petitioner has acted out of a loss of self control, the court will look at the petitioner's conduct before and after the homicide); Murden, 593 N.Y.S. 2d at 822 (finding that evidence failed to establish extreme emotional disturbance defense "inasmuch as [defendant's] behavior immediately before and after the killing was inconsistent with the loss of control associated with the affirmative defense"); People v. Ferris, 535 N.Y.S. 2d 17, 18 (2d Dep't 1988) (noting that defendant's appearance prior to attack and skillful driving thereafter were "inconsistent with the loss of self-control associated with this defense")

Accordingly, it is recommended that Petitioner's  claim for habeas relief based upon alleged prosecutorial misconduct be DENIED.

## IV. CONCLUSION

For the reasons stated above, the Court recommends that the Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied, and that the Petition be dismissed. Further, because Petitioner has failed to make a substantial showing of a denial of a constitutional right, the Court recommends that a certificate of appealability not issue. See 28 U.S.C. § 2253(c)(2) (1996).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:      April 25, 2007

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy

of the Report & Recommendation to all parties.[9]

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1©.**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1©.

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

---

[9]According to the New York State Department of Correctional Services' official website, Petitioner is presently incarcerated in the Eastern Correctional Facility, therefore, the correct Respondent is William Brown, the Superintendent of the Eastern Correctional Facility. 28 U.S.C. § 2243. In light of Petitioner's *pro se* status, the fact that this will not prejudice Respondent, and in the interests of court efficiency, this Court will deem the Petition amended to change the name of Respondent to William Brown.

The Clerk of the Court is directed to terminate David Miller as Respondent, add William Brown, Superintendent of the Eastern Correctional Facility, as the new Respondent, and revise the caption of this case accordingly.

SO ORDERED.

April 25, 2007

Victor E. Bianchini
United States Magistrate Judge